1
2
3                 UNITED STATES DISTRICT COURT
4                 EASTERN DISTRICT OF WASHINGTON
5
6   SEFERINO SALAZAR,                    No.  CV-12-03126-JTR
7               Plaintiff,
                                         ORDER GRANTING PLAINTIFF'S
8         v.                             MOTION  FOR SUMMARY
                                         JUDGMENT
9
10  CAROLYN W. COLVIN,
    Commissioner of Social Security,
11
12              Defendant.
13

14        **BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF

15  Nos.  15, 17.   Attorney D. James Tree represents Plaintiff; Special Assistant

16  United States Attorney Daphne Banay represents the Commissioner of Social

17  Security (Defendant).  The parties have consented to proceed before a magistrate

18  judge.  ECF No. 6.  After reviewing the administrative record and the briefs filed

19  by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and

20  **DENIES** Defendant's Motion for Summary Judgment.

21                            **JURISDICTION**

22        On June 5, 2008, Plaintiff filed a Title II application for a period of disability

23  and disability insurance benefits, along with a Title XVI application for

24  supplemental security income, both alleging disability beginning February 15,

25  2008.   Tr. 22; 229.  Plaintiff reported that he could not work due to bipolar

26  disorder, neck pain, spine pain, bladder problems, and mental issues.  Tr. 233.

27  Plaintiff's claim was denied initially and on reconsideration, and he requested a

28  hearing before an administrative law judge (ALJ).  Tr. 22; 82-133.   A hearing was

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

held on May 25, 2010, at which vocational expert Daniel McKinney, medical experts Stephen Gerber, M.D., Thomas McKnight, Ph.D., and Plaintiff, who was represented by counsel, testified.  Tr. 45-81.  ALJ Marie Palachuk presided.  Tr. 45.  The ALJ denied benefits on April 22, 2011.  Tr. 22-36.  The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties and, thus, they are only briefly summarized here.  At the time of the hearing, Plaintiff was 41 years old and living with his parents.  Tr. 68.  He dropped out of high school after completing the ninth grade.  Tr. 69.  Three days per week Plaintiff cared for his four-year old daughter while his girlfriend, who lived elsewhere, went to work.  Tr. 69-70.

Plaintiff has worked in many different jobs, usually for only a brief period at each job.  Plaintiff's work history includes jobs such as a hand packager, merchandiser, call center customer service representative, production worker, assembler at a bow manufacturing plant, customer service clerk for medical supply company, warehouse worker, laundry worker, and janitor.  Tr. 71-72.  Plaintiff worked for 73 different employers between 1996 and 2008.  Tr. 186-228.

At the administrative hearing, Plaintiff attempted to explain the reasons why he had been fired from several jobs:

Too slow, because of my having to hold in my urine – my, my need to urinate, I, you know, would constantly – I mean, over the years, this got worse.  I mean, you know, the records show that since 1990, you know, I started having bladder problems.  But I also know I – you know, in '86, I suffered a traumatic brain injury, and it just seems to me, you know, it's, you know, I mean, it doesn't take a rocket scientist to, you know, kind of put two and two together.  I just would get fired because I was too slow, and I was too preoccupied with what people thought of me, you know, how they were going to sabotage me, how they were going to hurt me physically and/or

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 2

mentally.  I would think this of the – my supervisors and office people, how they were going to manipulate or – my personal records. I was socially withdrawn.  I, you know, I'd not talk to anyone.  If I was spoken to, I'd get very upset, which would end up in, you know, later on, in confrontations, arguments, disagreements.  I wouldn't agree with, you know, what they were saying about my work.  So, I'd get fired because I was too antagonistic, too confrontational, too hostile.  And I would be too slow.  I – you know, for – I wouldn't get enough sleep.  I'd average five hours of sleep.

Tr. 62-63.

Plaintiff described a normal day as including repeated trips to the bathroom, watching television, making meals, playing with his daughter when she is with him, shopping and using a computer.  Tr. 66.

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

A district court's order upholding the Commissioner's denial of benefits is reviewed de novo. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales, 402 U.S. 389, 401 (1971).*  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.  *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 3

1  although deference is owed to a reasonable construction of the applicable statutes.

2  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

3          It is the role of the trier of fact, not this court, to resolve conflicts in

4  evidence.  *Richardson,* 402 U.S. at 400.  If evidence supports more than one

5  rational interpretation, the court may not substitute its judgment for that of the

6  Commissioner.  *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579

7  (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will

8  still be set aside if the proper legal standards were not applied in weighing the

9  evidence and making the decision.  *Brawner v. Secretary of Health and Human*

10  *Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If substantial evidence exists to

11  support the administrative findings, or if conflicting evidence exists that will

12  support a finding of either disability or non-disability, the Commissioner's

13  determination is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th

14  Cir. 1987).

                            **SEQUENTIAL PROCESS**

15

16          The Commissioner has established a five-step sequential evaluation process

17  for determining whether a person is disabled.  20 C.F.R. §§ 404.1520(a),

18  416.920(a); see *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  In steps one

19  through four, the burden of proof rests upon the claimant to establish a prima facie

20  case of entitlement to disability benefits.  *Tackett*, 180 F.3d at 1098-99.  This

21  burden is met once a claimant establishes that a physical or mental impairment

22  prevents him from engaging in his previous occupation.  20 C.F.R. §§

23  404.1520(a)(4), 416.920(a)(4).  If a claimant cannot do his past relevant work, the

24  ALJ proceeds to step five, and the burden shifts to the Commissioner to show that

25  (1) the claimant can make an adjustment to other work; and (2) specific jobs exist

26  in the national economy which claimant can perform.  *Batson v. Commissioner of*

27  *Social Sec. Admin.,* 359 F.3d 1190, 1193-94 (2004).  If a claimant cannot make an

28  adjustment to other work in the national economy, the claimant is deemed

disabled. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

## ALJ'S FINDINGS

At step one of the sequential evaluation, the ALJ found Plaintiff has not engaged in substantial gainful activity since February 15, 2008, his alleged onset date.  Tr. 24.  At step two, the ALJ found Plaintiff suffered from the severe impairments of history of renal cancer surgically treated in 2004, degenerative disk disease of the cervical spine, possible history of interstitial cystitis, dysthymia, social phobia with intermittent anxiety, antisocial personality disorder, methamphetamine dependence in remission, and alcohol abuse in partial remission.  Tr. 24.  At step three, the ALJ found Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments.  Tr. 25.  The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the limitations of avoiding climbing ladders, ropes, and scaffolds and occasionally climbing stairs and ramps, balance, stoop, crouch, kneel and crawl, and he is limited to superficial interaction with the general public and coworkers.  Tr. 26.  At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a customer service clerk, call center customer service representative, and assembler.  Tr. 35.  The ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.  Tr. 35.

## ISSUES

Plaintiff contends the ALJ erred by Plaintiff argues that the ALJ erred by (1) rejecting several medical opinions; (2) determining Plaintiff had little credibility; and (3) conducting an improper step four assessment.[1]  ECF No. 15 at 11.

---

[1]Plaintiff's brief combines the issues of the ALJ's assessment of the medical evidence with the ALJ's determination of credibility.  ECF No. 15 at 11; 16.  For clarity, the court analyzes these issues separately.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 5

**DISCUSSION**

**A.    Medical Opinions**

Plaintiff contends that the ALJ erred by rejecting several opinions from his treating and examining doctors.  ECF No. 15 at 13-16.  As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  *Id.*  Where the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).  Where a medical source's opinion is based largely on the Plaintiff's own subjective description of symptoms, and the ALJ has discredited the Plaintiff's claim as to those subjective symptoms, the ALJ may reject that opinion.  *Fair v. Bowen*, 885 F.2d at 605; *and see Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990) (Commissioner appropriately discounted claimant's nonexertional impairment complaints due to lack of corroborative evidence and consulting physician's suspicion that claimant was malingering).  When providing reasons for rejecting opinion evidence, the ALJ should provide "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).   The ALJ must do more than merely state his conclusions: "[h]e must set forth his own interpretations and explain why they, rather than the doctors', are correct."  *Id.* (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  The ALJ must explain the weight assigned to "other" sources to the extent that a claimant or subsequent reviewer may follow the ALJ's reasoning.  SSR 06-03p.

///

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 6

1    **1.    Dr. Rodenberger**

2        Plaintiff argues that the ALJ erred by rejecting Dr. Rodenberger's multiple

3    treating notes and opinions contained in the chart notes because "his treatment

4    notes offer significant insights into Mr. Salazar's limitations and condition and

5    should have been given great weight as they are consistent with treatment notes

6    and assessments from other providers."  ECF No. 15 at 13-14.

7        On August 14, 2009, Philip D. Rodenberger, M.D., wrote a letter related to a

8    deferred prosecution for Plaintiff.  Tr. 1089-90.  In the letter, Dr. Rodenberger

9    opined that Plaintiff is "significantly impaired with a psychiatric disorder, probably

10   exacerbated by head trauma occurring October 1, 2008."  Tr. 1089.  Dr.

11   Rodenberger also stated that some of Plaintiff's behavior can be attributed to his

12   head trauma, and his diagnosis is delusional disorder, but he also shows evidence

13   of obsessive compulsive disorder, schizoaffective disorder, and mixed personality

14   disorder with obsessive, paranoid and sociopathic features.  Tr. 1089.  Dr.

15   Rodenberger indicated he believed Plaintiff was amenable to treatment for his

16   mental illness.  Tr. 1089.

17       The ALJ's analysis of Dr. Rodenberger's opinion is limited to providing

18   reasons for rejecting the August 14, 2009, letter.  Tr. 34.  The ALJ ruled that the

19   letter was "wholly inconsistent" with the doctor's chart note from April 2, 2009, no

20   evidence existed to support the assertion Plaintiff had suffered significant head

21   trauma on October 1, 2008, and the letter does not contain a medical source

22   statement indicating Plaintiff's functional limitations.  Tr. 34.

23       As the Plaintiff points out, the ALJ failed to address several records authored

24   by Dr. Rodenberger that reveal relevant opinions about Plaintiff's impairments.

25   ECF No. 15 at 13-14.  For example, on April 2, 2009, Dr. Rodenberger noted that

26   Plaintiff has been consistently described as "angry, demanding, manipulative, and

27   dismissive," with "paranoid narcissistic, and sociopathic qualities."  Tr. 648.  Dr.

28   Rodenberger noted that Plaintiff's speech was "coherent, but obsessively

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 7

digressive, tangential, and circumstantial." Tr. 649. Dr. Rodenberger noted that Plaintiff presented a "diagnostic and treatment challenge," and stated it was "striking" that previous reports failed to note Plaintiff's "very pronounced obsessive cognitive style, which is in the service of his general paranoia and manipulativeness." Tr. 650. At that visit, the doctor also commented that Plaintiff was preoccupied with the shape of his nose, so much that he believed his nose caused difficulty with "communicating and feeling at ease," and he demanded a doctor's letter authorizing DSHS to pay for rhinoplasty. Tr. 647-48.

On May 7, 2009, Dr. Rodenberger observed, "His cognitive disorganization is quite striking. I don't know if this has to do with previous head trauma or to a severe obsessive compulsive component. I am increasing his medication to see if we can decrease impulsivity and paranoia." Tr. 699.

On June 23, 2009, Dr. Rodenberger noted that Plaintiff continued "to ramble on in his typical obsessive, digressive and overly inclusive fashion. His cognitive style reminds me of what has been described as the '[viscous] personality' of individuals with epilepsy."[2] Tr. 703. Dr. Rodenberger observed that Plaintiff "has been very impaired in a peculiar kind of way. What is most striking is his obsessive cognitive style with the [viscous] or sticky qualities noted previously." Tr. 704.

On September 15, 2009, Dr. Rodenberger again commented on Plaintiff's cognitive limits: "Once again, I am struck by this individual's cognitive style which is characterized by a lot of obsessive preoccupations including a body dysmorphic type concern about the shape of his nose." Tr. 718.

---

[2]"Clinical case reports suggest that viscosity, the behavioural tendency to talk repetitively and circumstantially about a restricted range of topics, is common in patients with temporal lobe epilepsy (TLE)." J. Neurology, neurosurgery & Psychiatry, February 1992, at 149-52.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 8

On December 15, 2009, Dr. Rodenberger charted that Plaintiff continued to be "excessively preoccupied" with his nose and his demands for plastic surgery. Tr. 732.

The ALJ failed to address these chart notes from Dr. Rodenberger. The notes indicate, at a minimum, that Plaintiff was "very impaired" in an unusual way, and his thinking was "obsessive, digressive and overly inclusive." Tr. 703-04. An ALJ is not required to discuss each item of evidence, but the record should indicate that all evidence presented was considered. *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000). Moreover, the ALJ must explain why significant probative evidence is rejected. *Vincent v. Heckler*, 739 F.2d 1393, 1394 95 (9th Cir. 1984). In this case, it is not apparent that the ALJ considered Dr. Rodenberger's multiple references to Plaintiff's impaired cognition. This treating doctor's observations that Plaintiff was "very impaired," is significant, probative evidence related to Plaintiff's ability to obtain and sustain work. As a result, remand is required so the ALJ may properly consider all of Dr. Rodenberger's opinions as reflected in his treating notes, and provide a "detailed and thorough summary of the facts and conflicting clinical evidence, stating [an] interpretation thereof, and making findings." See *Reddick*, 157 F.3d at 725.

### 2.    Dennis Gaskill, M.D.

Plaintiff contends that the ALJ erred by rejecting Dr. Gaskill's opinion that Plaintiff would miss two to three days of work per month. ECF No. 15 at 14.

On November 23, 2010, Dennis M. Gaskill, M.D., completed a 13-item questionnaire. Tr. 1097-98. In answering the questions, Dr. Gaskill indicated Plaintiff's diagnoses were renal cell carcinoma and chronic interstitial cystitis. Tr. 1097. Dr. Gaskill stated Plaintiff's symptoms included urinary urgency, frequency and bladder pain, and the doctor noted Plaintiff had a small capacity bladder. Tr. 1097. Dr. Gaskill also stated that Plaintiff "takes naps" during the day, and Dr. Gaskill opined that on a more-probable-than-not basis, Plaintiff would miss work

2-3 days per month due to medical impairments.  Tr. 1097-98.

The ALJ gave little weight to Dr. Gaskill's opinions on the questionnaire because Plaintiff had not been regularly treated by the clinic since 2006.  Tr. 32. The ALJ stated that "the claimant stopped going to [Dr. Gaskill's] group in 2006 and did not return until he requested this form be completed."  Tr. 32.  The ALJ concluded that Plaintiff was merely seeking treatment to bolster his disability claim.  Tr. 32.

The ALJ cited no evidence to support his conclusory assertion that Plaintiff sought treatment from Dr. Gaskill merely to bolster his disability claim.  *See Nguyen v. Chater*, 100 F.3d 1462, 1464-1465 (9th Cir. 1996) (ALJ impermissibly rejected an examining psychologist's diagnosis of depression where the claimant did not seek treatment for more than three years and then consulted the psychologist at the request of his attorney); *Cf. Ryan v. Comm'r of Social Sec.,* 528 F.3d 1194, 1199 (9th Cir. 2008)(holding that the ALJ did not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the claimant's complaints where the doctor did not discredit those complaints and supported his or her ultimate opinion with clinical observations and mental status examination findings).  The ALJ's reason for rejecting Plaintiff's treating physician opinion is not specific and legitimate and, thus, the ALJ erred by rejecting Dr. Gaskill's opinions on these grounds.  On remand, the ALJ should reconsider Dr. Gaskill's opinion and provide a new analysis.  *See Reddick,* 157 F.3d at 725.

### 3.    Margaret A. MacLeod, M.D.

Plaintiff contends that the ALJ erred by rejecting Dr. MacLeod's opinion that Plaintiff would "need frequent interrupts to void."  ECF No. 15 at 14.

On April 21, 2008, Margaret A. McLeod, M.D., completed a Physical Evaluation form.  Tr. 401-04.  Dr. MacLeod noted that Plaintiff's affect was "not normal; very intense, pressured speech, poor insight and judgment."  Tr. 402.  Dr.

McLeod indicated that Plaintiff had an irritable bladder, some pain with urination, and he reported he had to void every thirty minutes. Tr. 403. Dr. McLeod stated that "notes," presumably medical records, indicated that from 1999-2001, Plaintiff was able to last "several hours" between voids. Tr. 403. Dr. MacLeod ultimately diagnosed Plaintiff with chronic interstitial cystitis and opined that this condition would significantly interfere with the ability to perform one or more basic work related activities. Tr. 403.

The ALJ gave significant weight to most of Dr. MacLeod's opinion. Tr. 31. However, the ALJ gave little weight to the portion of Dr. MacLeod's opinion that Plaintiff would need "frequent interruptions to void" because, according to the ALJ, Dr. MacLeod acknowledged Plaintiff could wait several hours between voids, and thus she used the term "frequent" differently than it is used in the Social Security disability context.[3] Tr. 31. Plaintiff argues that the difference in definition is immaterial, because Dr. MacLeod's opinion indicated Plaintiff needs to void more frequently than normal. ECF No. 15 at 14-15.

On review, it appears that while Dr. MacLeod noted that Plaintiff reported he needed to void every thirty minutes, Dr. MacLeod also stated that "notes" indicated that for the time period 1991-2001, Plaintiff could hold urine for up to several hours. It is not clear from the report that Dr. MacLeod endorsed either

---

[3]Neither party briefed the SSA definition of "frequent" and whether that definition was applicable to this analysis. In the Social Security context, the term "frequent," describes how often a worker performs a certain task, and is defined as "from one-third to two-thirds of the time." SSR 83-10; see *Gallant v. Heckler*, 753 F.2d 1450 n.1 (9th Cir. Ariz. 1984). The Physical Evaluation completed by Dr. MacLeod contained a similar definition and defined "frequently" as "the person is able to perform the function for 2.5 to six (6) hours in an eight hour day. It is not necessary that performance be continuous." Tr. 403.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 11

estimate of Plaintiff's urinary frequency, but instead she simply opined Plaintiff would require "frequent" interruptions to void.  Tr. 403.  While the record is unclear on Dr. MacLeod's definition of "frequent," it is immaterial because the definition of this term is not dispositive.  The doctor assessed that Plaintiff's need to urinate would pose "significant interference" with his ability to perform basic work activities.  Tr. 403.   The ALJ's conclusion that Dr. MacLeod "acknowledged Plaintiff could wait several hours between voids" is not supported by the record, and the ALJ's reliance upon the possible differences in definition of "frequent," does not constitute a legitimate and specific reason to discount the opinion.  On remand, the ALJ should reconsider Dr. MacLeod's opinion and provide an analysis in accordance with the standards announced in *Reddick*, 157 F.3d at 725.

### 4.     LumOr Chet, ARNP

Plaintiff argues that the ALJ erred by rejecting an opinion from LumOr Chet, ARNP, that indicated Plaintiff was limited to less than sedentary work.  ECF No. 15 at 15.

On September 24, 2010, LumOr Chet, ARNP, completed a functional assessment form in which she opined that Plaintiff's "work function" was impaired, and he could stand for 1-2 hours and sit for only three hours in an eight-hour workday, thus concluding the Plaintiff was able to work less than an eight hour day.  Tr. 1104.  Ms. Chet noted that Plaintiff had a history of osteoarthritis of the knees and urinary urgency, frequency, a history of head trauma, and a delusional disorder.  Tr. 1105.

The ALJ gave little weight to Ms. Chet's opinions in the September 24, 2010, form.  Tr. 32.  The ALJ reasoned that no evidence of a severe knee impairment existed to support Ms. Chet's opinion.  Tr. 32.  Additionally, the ALJ found that the evidence indicated Plaintiff's urinary frequency and urgency was controlled, no evidence existed that Plaintiff suffered a head trauma, and Ms. Chet was not qualified to make a determination regarding Plaintiff's mental functioning.

Tr. 32.

Plaintiff provided recent medical records related to a knee impairment. On April 21, 2010, Thomas C. Kennedy, M.D., examined Plaintiff and noted he had "recurrent moderate to severe effusions of the left knee." Tr. 1050. Dr. Kennedy aspirated Plaintiff's knee fluid for testing. Tr. 1050. After reviewing the results, on May 13, 2010, Dr. Kennedy indicated Plaintiff has "evidence of bilateral patellofemoral syndrome with some evidence of mild arthritis. The possibility of a rheumatologic condition has not been completely ruled out." Tr. 1047. Dr. Kennedy stated he would try to facilitate Plaintiff's referral to a rheumatologist, but he believed it would be difficult due to Plaintiff's insufficient insurance coverage. Tr. 1047. The record is devoid of evidence that Plaintiff was subsequently examined by a rheumatologist. On September 24, 2010, Plaintiff was examined by LumOr Chet, who noted Plaintiff's complaints of knee pain, decreased mobility, swelling and weakness. Tr. 1108.

The evidence related to Plaintiff's knee impairment indicates he suffered from recurrent episodes of swelling and pain. The cause of Plaintiff's knee issue was not definitively diagnosed, beyond Dr. Kennedy's suspicion of bilateral patellofemoral syndrome with evidence of mild arthritis. The ALJ did not question the testifying medical expert about Plaintiff's knee impairment. Tr. 50-52. As a result, the evidence is unclear about whether Plaintiff's knee issues constitute a severe impairment.

The ALJ also discounted Ms. Chet's opinion in part because the evidence indicated Plaintiff's urinary issues were "under control." Tr. 32. The ALJ failed to provide an explanation or cite to a medical record that supports this conclusion. The record is replete with Plaintiff's complaints about urination problems, and a chart note one month prior the administrative hearing reveals Plaintiff continued to seek treatment for urinary problems. Tr. 1108. As such, the record does not support the ALJ's conclusion that Plaintiff's urinary problems were controlled.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 13

Near the end of the DSHS evaluation, Ms. Chet noted Plaintiff's history includes osteoarthritis, urinary problems, head trauma in 1985, and a delusional disorder.  Tr. 1105.  The ALJ found that the notation about Plaintiff's head trauma was not supported by evidence in the record, and that Ms. Chet was not qualified[4] to "make a determination" about Plaintiff's mental functioning.  Tr. 32.  While the record contains multiple references to Plaintiff's head trauma,[5] no medical records associated with that injury are included in this record.  Notwithstanding that lack of evidence, it is not clear from Ms. Chet's notation that she in fact relied upon the occurrence of a head trauma in assessing Plaintiff's condition.  It is similarly unclear that she made a "determination" about Plaintiff's mental functioning.  Instead, it appears that these comments were tangential to Ms. Chet's opinion about Plaintiff's functional assessment, instead of evidence she relied upon in assessing Plaintiff's functional limitations.

On remand, the ALJ should seek a medical expert's opinion related to Plaintiff's knee impairment.  Additionally, the ALJ should revisit Ms. Chet's opinion and provide a detailed analysis for the weight given to that opinion.  *See Reddick*, 157 F.3d at 725.

///

---

[4]The text of the ALJ's order states, "there is evidence Ms. Chet is qualified to make a determination as to claimant's mental functioning."  Tr. 32.  In reviewing the context, the ALJ is providing reasons why Ms. Chet's opinion was given little weight and, thus, the court deems it likely that the ALJ inadvertently omitted the word "no" before "evidence." If the omitted "no" is inserted before "evidence," the sentence reflects the ALJ's likely intent that Ms. Chet, a nurse practitioner, was not qualified to make a determination about Plaintiff's mental status.

[5]See, e.g., Tr. 457; 461; 666.

1    **5.    Nina Rapisarda, MSW**

2    Plaintiff argues that the ALJ erred by rejecting the 2008 assessment from

3    Ms. Rapisarda.   On April 8, 2008, Nina Rapisarda, MSW, examined Plaintiff and

4    completed a Psychological/Psychiatric Evaluation.  Tr. 974-77.   In the evaluation,

5    Ms. Rapisarda assessed Plaintiff with several marked and moderate-to-marked

6    impairments on the short clinical rating scale.  Tr. 975.

7    Ms. Rapisarda assessed Plaintiff with four marked cognitive factors in the

8    ability to: (1) understand, remember and follow simple (one or two step)

9    instructions; (2) understand, remember and follow complex (more than two step)

10   instructions; (3) learn new tasks; and (4) exercise judgment and make decisions.

11   Tr. 976.  Ms. Rapisarda also assessed Plaintiff as moderately impaired in

12   performing routine tasks and noted, "client appears very thought disordered."  Tr.

13   976.

14   In social factors, Ms. Rapisarda assessed Plaintiff as severely impaired in his

15   ability to respond appropriately to and tolerate the pressure and expectations of a

16   normal work setting.  Tr. 976.  She also found Plaintiff was markedly limited in his

17   ability to: (1) relate appropriately to co-workers and supervisors; (2) interact

18   appropriately in public contacts; and (3) control physical or motor movements and

19   maintain appropriate behavior.  Tr. 976.  Finally, Ms. Rapisarda indicated that at

20   that time, Plaintiff was not on medication, and opined he "<u>should</u> <u>be</u>." Tr. 976

21   (emphasis in original).

22   The ALJ gave little weight to the opinion of April 8, 2008, opinion from Ms.

23   Rapisarda.  The ALJ reasoning included: (1) the third page of the evaluation was

24   missing; (2) the remainder of the evaluation was "clearly based on the claimant's

25   self-report;" (3) Ms. Rapisarda was not a treating health provider; (4) the notations

26   are "meager;" (5) no evidence exists that Plaintiff has bipolar disorder; and (6) no

27   evidence exists that "clinical testing was performed."  Tr. 33.

28   The administrative record contains the third page of Ms. Rapisarda's

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 15

evaluation.  Tr. 976.  The ALJ's reliance upon a missing page of a medical evaluation is troubling, as it is the duty of the ALJ to fully and fairly develop the record and to assure that the claimant's interests are considered.  *See Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).  The ALJ's rejection of a medical opinion due to a missing page – without an apparent attempt to locate the available page – is a failure to fulfill his or her duty.  Because the ALJ failed to review all pages of the evaluation, she failed to fully analyze the opinion.  On remand, the ALJ is directed to analyze Ms. Rapisarda's full evaluation and provide a detailed and thorough explanation for the weight afforded to it.  *See Reddick*, 157 F.3d at 725.

**B.    Credibility**

In his argument related to the medical opinions, Plaintiff included a single paragraph alleging the ALJ failed to provide proper reasoning in her credibility analysis.  ECF No. 15 at 16.  Plaintiff's analysis is based upon a single sentence asserting "the ALJ offered little more than vague assertions that his allegations are not consistent with the evidence or his activities of daily living."  ECF No. 15 at 16.  Plaintiff fails to provide argument, analysis, or citation to the record and citation to legal authority.  As Defendant points out, Plaintiff's argument is not adequately briefed.  ECF No. 17 at 22.  *See Carmickle v. Comm'r of the Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court will not address issue where plaintiff failed to argue the issue with specificity).  In light of Plaintiff's inadequate briefing, and the necessity of remand, the court will not address the ALJ's credibility determination in this opinion.

**C.    Step Four**

Plaintiff argues that the ALJ erred by finding that Plaintiff's knee pain, arthritis, frequent need to void and mental issues were not limiting.  ECF No. 15 at 17-18.  Additionally, Plaintiff argues, the ALJ failed to identify the specific demands of Plaintiff's past relevant work and compare those demands to his

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 16

specific limitations.  ECF No. 15 at 19.  Because the ALJ will reconsider the medical opinions on remand, the ALJ will then conduct a new step four and step five assessment.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the court concludes the ALJ's decision is not supported by substantial evidence and is based on legal error. On remand, the ALJ should reconsider the medical opinions and support the findings regarding those opinions with specific, legitimate evidence in the record. The ALJ should also review the credibility analysis and determine if a new assessment is necessary.  The ALJ should also obtain a medical expert's opinion related to Plaintiff's knee impairment, and perform a new step four and step five analysis.  Accordingly,

**IT IS ORDERED**:

1.     Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED** and remanded for additional proceedings.

2.     Defendant's Motion for Summary Judgment, **ECF No. 17**, is **DENIED.**

3.     An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  Judgment shall be entered for Plaintiff and the file shall be CLOSED.

DATED January 27, 2014.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 17